UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SIKHS FOR JUSTICE "SFJ", INC.,     :
                Plaintiff,                      :

      v.                                    :    15 Civ. 433 (LTS)

JOHN KERRY, in his official capacity as U.S.    :
Secretary of State,
                Defendant.                  :
------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street
New York, New York 10007
Telephone: (212) 637-2761
Facsimile: (212) 637-2786

CHRISTOPHER CONNOLLY
Assistant United States Attorney
    – Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ............................................................................................................................2

    A.    Legal Framework for the Designation of Foreign Terrorist Organizations .............2

    B.    The Complaint ...........................................................................................................4

ARGUMENT—THE COMPLAINT SHOULD BE DISMISSED .................................................5

    A.    The Court Lacks Subject-Matter Jurisdiction over SFJ's Claims............................6

        1.    Standard of Review for Motions to Dismiss Under Rule 12(b)(1) ..............6

        2.    SFJ Lacks Standing to Assert Its Claims .....................................................6

        3.    The Political Question Doctrine Bars SFJ's Claims..................................10

    B.    The Complaint Fails to State a Claim on Which Relief May Be Granted .............12

        1.    Standard of Review for Motions to Dismiss Under Rule 12(b)(6) ............12

        2.    Section 1189 and Executive Order 13224 Do Not Create Private Rights of Action for Third Parties .............................................................13

        3.    SFJ Is Not Entitled to a Declaratory Judgment Under the APA................16

        4.    SFJ Is Not Entitled to a Writ of Mandamus...............................................17

CONCLUSION..............................................................................................................................18

## **PRELIMINARY STATEMENT**

Defendant John Kerry, in his official capacity as U.S. Secretary of State, by his attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of his motion to dismiss the Complaint (Dkt. # 1) pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction, and 12(b)(6), for failure to state a claim on which relief may be granted.

Plaintiff Sikhs for Justice, Inc. ("SFJ"), asks this Court to declare that Rashtriya Swayamsevak Sangh ("RSS"), an Indian organization, is a "foreign terrorist organization" under relevant U.S. law and to direct the Secretary of State to designate it as such under that law. But neither SFJ nor this Court possesses authority to compel the Secretary to designate an entity as a foreign terrorist organization—a discretionary action that implicates important foreign affairs and national security considerations, and which is entrusted to the political branches. The Complaint is therefore subject to dismissal on numerous grounds.

At the threshold, the Court lacks subject-matter jurisdiction over SFJ's claims because (i) SFJ lacks standing to bring such claims, and (ii) even if SFJ had standing, the political question doctrine bars judicial review where the Secretary has not designated an organization. The Complaint should also be dismissed for failure to state a claim on which relief may be granted. First, the statute that authorizes the Secretary to designate foreign terrorist organizations does not create a private right of action that allows third parties such as SFJ to compel a designation. Second, SFJ fails to state a claim for declaratory relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555, 701 *et seq.*, because the relevant statute provides an alternate framework for judicial review that supplants the APA, and, moreover, the statute also lacks relevant standards that this Court could apply in evaluating the Secretary's actions. Lastly, the

Complaint fails to state a claim for mandamus relief because the Secretary does not owe a non-discretionary duty to SFJ to designate RSS as a foreign terrorist organization and, relatedly, SFJ has no clear right to the relief it seeks. For these reasons, the Complaint should be dismissed.

## BACKGROUND

**A.     Legal Framework for the Designation of Foreign Terrorist Organizations**

Section 302 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which is codified at 8 U.S.C. § 1189, authorizes the Secretary of State "to designate an organization as a foreign terrorist organization" if he or she finds that: "(A) the organization is a foreign organization"; "(B) the organization engages in terrorist activity" or "terrorism" as defined in other specified statutes, or "retains the capability and intent to engage in terrorist activity or terrorism"; and "(C) the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States." 8 U.S.C. § 1189(a). As the D.C. Circuit Court of Appeals has recognized, "[t]he consequences of that designation are dire." *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 196 (D.C. Cir. 2001). For example, funds located in the United States that belong to the foreign terrorist organization are blocked, *see* 18 U.S.C. § 2339B(a)(2), members of the organization are barred from entering the United States, *see* 8 U.S.C. § 1182(a)(3)(B)(i)(IV)-(V), and persons within the jurisdiction of the United States are prohibited from "knowingly providing material support or resources" to the organization, *see* 18 U.S.C. § 2339B(a)(1).

"[T]he administrative process by which the Secretary" designates an entity as a foreign terrorist organization "is a truncated one." *Nat'l Council of Resistance of Iran*, 251 F.3d at 196. The Secretary is required to "create an administrative record" when designating a foreign terrorist organization, 8 U.S.C. § 1189(a)(3)(A), and that record may contain classified

information that is subject only to very limited disclosure to a court ex parte and in camera for purposes of judicial review, *see* 8 U.S.C. § 1189(a)(3)(B).

After providing classified notice to Congress, as required by statute, the Secretary's decision to designate an organization as a foreign terrorist organization is published in the Federal Register. 8 U.S.C. § 1189(a)(2). Once an organization has been designated, its avenues for challenging that designation are limited and specifically provided for by statute. The organization may petition the Secretary for revocation of the designation, in which case the statute requires the Secretary to make a determination on the petition within 180 days. *See* 8 U.S.C. § 1189(a)(4). The organization may also petition for review of the designation in the D.C. Circuit Court of Appeals. *See* 8 U.S.C. § 1189(c). Such judicial review is "based solely upon the administrative record" compiled by the Secretary, including any classified information upon which the Secretary relied in making the designation, 8 U.S.C. § 1189(c)(2), and the D.C. Circuit will set aside a designation only in very limited circumstances as set forth in the statute, *see* 8 U.S.C. § 1189(c)(3); *see also Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1137 (9th Cir. 2000) (recognizing high degree of deference to Secretary's designation of a foreign terrorist organization). This limited review for challenges brought by designated entities themselves is the only form of judicial review that the statute provides.

Following the terrorist attacks on September 11, 2001, by the authority vested in the President by, among other statutes, the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 701 *et seq.*, and section 5 of the United Nations Participation Act of 1945 ("UNPA"), 22 U.S.C. § 287c, President George W. Bush issued Executive Order 13224. The Executive Order authorizes the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General, to designate "foreign persons" (either individuals or entities)

as "specially designated global terrorists" if the Secretary determines that the individuals or entities "have committed, or [ ] pose a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States." Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001). When an organization is named as a specially designated global terrorist, all of its assets within the United States are blocked. *See id.* Because designation of an organization as a specially designated global terrorist "involv[es] sensitive issues of national security and foreign policy," *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 166 (D.C. Cir. 2003), judicial review of such designations is "extremely deferential," *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007).

B.     The Complaint

SFJ describes itself as "a non-profit human rights advocacy group." Compl. at 3. In its Complaint, SFJ asks this Court "to issue a Judgment declaring [RSS] as a 'foreign terrorist organization' (FTO), for believing in and practicing a fascist ideology and for running a passionate, vicious and violent campaign to turn India into a 'Hindu' nation with a homogeneous religious and ethnic identity." *Id.* at 1-2. The Complaint characterizes RSS as "an ultra-religious, fundamentalist, extremist and Hindu supremacist group." *Id.* at 7. It alleges that, in recent years, RSS has spearheaded numerous violent attacks on members of non-Hindu religious groups throughout India, and has sought to convert members of India's religious minority groups to Hinduism. *See id.* at 5-6, 14-16. The Complaint further alleges that India's current Prime Minister, Narendra Modi, has longstanding ties to RSS, *see id.* at 10-12, and that certain organizations in the United States that are affiliated with RSS similarly espouse a Hindu nationalist agenda, *see id.* at 20-21 & Ex. 1.

4

SFJ indicates that, in December 2014, it wrote to the Secretary of State requesting that he designate RSS as a foreign terrorist organization and a specially designated global terrorist, but that the Secretary has not designated RSS.  *See id.* at 3-4, 22.[1]  SFJ claims that RSS meets the requirements for being designated a foreign terrorist organization under section 1189(a), *i.e.*, that it is (i) a foreign organization that (ii) engages in terrorist activity, and (iii) its activities threaten the security of U.S. nationals or the national security of the United States.  *See id.* at 17-22.  Thus, according to SFJ, section 1189 imposes on the Secretary of State an "obligation to [SFJ]," as well as "a clear duty to act . . . pursuant to the letter sent by [SFJ] in December 2014 to designate RSS a foreign terrorist organization."  *Id.* at 24, 25.  SFJ alleges that, despite this purported obligation, the Secretary "has failed to take any action within a reasonable amount of time."  *Id.*

SFJ asks this Court to issue a declaratory judgment pursuant to the APA, 5 U.S.C. §§ 555(b) and 706(1), stating "that [the Secretary] owes [SFJ] a duty to designate RSS as a foreign terrorist organization and further that RSS is in fact a foreign terrorist organization under the cited law as alleged herein."  *Id.* at 23-24.  Similarly, SFJ requests "a writ of mandamus against [the Secretary] with respect to the duty owed [SFJ] by [the Secretary] to designate RSS as a foreign terrorist organization and further for this honorable Court to find that RSS is in fact a foreign terrorist organization under the cited law as alleged herein."  *Id.* at 25-26.

## ARGUMENT

### THE COMPLAINT SHOULD BE DISMISSED

The Complaint should be dismissed for multiple reasons.  First, the Court lacks subject-matter jurisdiction over SFJ's claims because SFJ lacks standing to bring such claims and, even

---

[1] Although SFJ states that a copy of its letter is annexed to the Complaint, *see id.* at 24, no such exhibit is included with SFJ's filing.  The contents of that letter, however, are immaterial to the Court's determination of the instant motion to dismiss.

5

if it did have standing, judicial review of those claims is barred by the political question doctrine. Second, the Complaint fails to state a claim on which relief may be granted because section 1189 does not create a private right of action, SFJ is not entitled to a declaratory judgment under the APA, and SFJ is not entitled to mandamus relief.

**A.     The Court Lacks Subject-Matter Jurisdiction over SFJ's Claims**

    **1.     Standard of Review for Motions to Dismiss Under Rule 12(b)(1)**

"The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  While, in general, the court must "take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff," jurisdiction "must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations and internal quotation marks omitted).

    **2.     SFJ Lacks Standing to Assert Its Claims**

As a threshold matter, the Complaint should be dismissed because SFJ lacks standing to assert its claims.  "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'"  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue."  *Id.* (quotation marks omitted).  Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "A motion to dismiss for want of standing is . . . properly brought

pursuant to [Rule] 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007); *see also Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88-89 (2d Cir. 2009) (beginning its review of district court's dismissal under Rule 12(b)(1) by "consider[ing] whether plaintiffs have established Article III standing").

To establish standing, a plaintiff must demonstrate: (1) that it has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is a sufficient "causal connection between the injury and the conduct complained of"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks and citations omitted); *accord Selevan*, 589 F.3d at 89.

SFJ does not meet these requirements. First, SFJ has not suffered an injury in fact because it has not experienced an "invasion of a legally protected interest." *Lujan*, 504 U.S. at 560; *see also Raines v. Byrd*, 521 U.S. 811, 819 (1997) ("We have also stressed that the alleged injury must be legally and judicially cognizable."). Section 1189 vests the sole authority for designating foreign terrorist organizations with the Secretary of State, provides the Secretary with broad latitude in the process by which he makes those designations, and subjects such designations to only limited and highly deferential judicial review based on challenges brought by the designated entities themselves. *See* 8 U.S.C. §§ 1189(a), (c). Judicial review of designation decisions under Executive Order 13224 is likewise highly deferential, *see, e.g., Islamic Am. Relief Agency*, 477 F.3d at 734, and is largely limited to challenges brought by the designated agencies themselves, *see, e.g., Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1138 (9th Cir. 2009) (plaintiff lacked standing to challenge Executive Branch's

7

authority to designate two other entities under Executive Order 13224 because plaintiff "has never been designated, or threatened with designation, on account of it"). Nowhere does either section 1189 or Executive Order 13224 provide for third parties to nominate entities to be designated as foreign terrorist organizations, let alone compel the Secretary to make such designations. Accordingly, neither the fact that the Secretary has not responded to SFJ's December 2014 letter, nor the fact that the Secretary has not designated RSS as a foreign terrorist organization pursuant to that letter, amounts to a legally cognizable injury providing SFJ with standing to bring this action. *Cf. McConnell v. FEC*, 540 U.S. 93, 227 (2003) ("We have never recognized a legal right comparable to the broad and diffuse injury asserted by the [ ] plaintiffs."); *see also Evans v. Lynn*, 537 F.2d 571, 598 (2d Cir. 1975) ("Disagreement with government action or policy, however strongly felt, does not, standing alone, constitute an 'injury' in the Constitutional sense which is cognizable in the federal courts and susceptible of remedy by the judicial branch."). Nor, for that matter, does SFJ demonstrate a particularized injury stemming from the lack of designation of RSS. Rather, at best, any injury it could articulate "is not only widely shared, but is also of an abstract and indefinite nature." *FEC v. Akins*, 524 U.S. 11, 23 (1998) (quotation marks omitted).

Second, SFJ cannot establish a "causal connection between the injury" (if one existed) and "the conduct complained of," *i.e.*, the fact that the Secretary has not designated RSS. *See Lujan*, 504 U.S. at 560. Again, neither section 1189 nor Executive Order 13224 obliges the Secretary of State to take action pursuant to requests from third parties to designate entities as foreign terrorist organizations; nor, for that matter, is the Secretary obliged to designate all entities that might arguably meet section 1189(a)'s or Executive Order 13224's requirements. Thus, any injury that SFJ could identify would not be "fairly traceable to the challenged action of

8

the [Secretary]," *Bennett v. Spear*, 520 U.S. 154, 167 (1997) (citing *Lujan*, 504 U.S. at 560-61), because the Secretary has not taken any actions resulting in a legally cognizable injury to SFJ.

SFJ lacks standing even to the extent that it is attempting to assert its claims based on alleged RSS actions that SFJ contends have harmed its members. *See, e.g.,* Compl. at 5-6, 14-16. First, SFJ lacks the "associational standing" necessary to bring such a claim because, as explained above, neither section 1189 nor Executive Order 13224 provides for third parties to nominate entities to be designated as foreign terrorist organizations or compel the Secretary to make such designations. *See Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 157 (2d Cir. 2012) (an association has standing to bring suit on behalf of its members only when, among other things, "its members would otherwise have standing to sue in their own right") (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). Moreover, SFJ could not establish causation for such injuries because RSS's alleged actions are not traceable to the Secretary. *See Fla. Audobon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (causation prong of standing test requires that it be "substantially probable that the challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff") (internal citations omitted).

Finally, there is also a serious question whether any relevant injury, if it existed (which it does not), would be redressed by a favorable decision. *Lujan*, 504 U.S. at 561. To the extent SFJ claims that the relief it seeks—an order requiring the Secretary to designate RSS—would redress the harms experienced by individuals owing to RSS's alleged actions, that claim is, at best, "merely speculative," *Lujan*, 504 U.S. at 561, and not redressable by a favorable decision here because RSS's response to a designation would be uncertain, *see, e.g., Talenti v. Clinton*, 102 F.3d 573, 575-78 (D.C. Cir. 1996) (plaintiff lacked standing to require the Government to

withhold assistance from Italy under statute prohibiting assistance to governments that had appropriated U.S. persons' property because "[e]ven the improbable scenario of a decision to withhold assistance from Italy does not redress [plaintiff's] injury" due to uncertainty about how Italy would react). Moreover, a judicial remedy should be no greater than necessary to afford complete relief to the plaintiff. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Accordingly, because neither section 1189 nor Executive Order 13224 provides a basis for the relief SFJ seeks here—judicially-ordered designation of RSS—SFJ cannot establish redressability. *See, e.g., Aerotrade, Inc. v. Agency for Int'l Dev.*, 387 F. Supp. 974, 975-76 (D.D.C. 1974) (plaintiff lacked standing where relevant statute did not provide for relief it sought).

### 3. The Political Question Doctrine Bars SFJ's Claims

Even if SFJ had standing to bring this action, which it does not, the Complaint should still be dismissed for lack of subject-matter jurisdiction because SFJ's claims are barred by the political question doctrine.

The political question doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986); *see also Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) ("no justiciable 'controversy' exists when parties seek adjudication of a political question"). Among other things, the doctrine "bars [judicial] review of claims that, regardless of how they are styled, call into question the prudence of the political branches in matters of foreign policy or national security constitutionally committed to their discretion." *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 842 (D.C. Cir. 2010); *see also In re Austrian & German Holocaust Litig.*, 250 F.3d 156, 163–64 (2d Cir. 2001) (per curiam) ("separation of

powers prohibits the federal courts from excursions into areas" such as "[t]he conduct of foreign relations" that are "committed to the Executive Branch or the Legislative Branch").

Within the context of challenges brought by foreign terrorist organizations themselves to the Secretary's designation—the only challenges for which section 1189 provides judicial review, *see* 8 U.S.C. § 1189(c)—the D.C. Circuit has held that the political question doctrine places substantial limits on review of the Secretary's designations. Specifically, although the court may review the first two requirements for designation of a foreign terrorist organization under section 1189(a), *i.e.*, whether the organization is foreign and engages in terrorist activity or terrorism or retains the capability and intent to do so, it cannot "pass upon" the third prerequisite for designation—namely, "the Secretary's national security finding under § 1189(a)(1)(C)" that the organization's activities threaten the security of U.S. nationals or the national security of the United States, because that question is nonjusticiable. *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 23 (D.C. Cir. 1999) (citing *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103, 111 (1948) (foreign policy decisions are "of a kind for which the Judiciary has neither aptitude, facilities nor responsibility and have long been held to belong in the domain of political power not subject to judicial intrusion or inquiry")); *see also El-Shifa Pharm. Indus. Co.*, 607 F.3d at 843 ("[I]n reviewing the Secretary of State's designation of a group as a 'foreign terrorist organization' . . . we may not determine whether 'the terrorist activity of the organization threatens the security of United States nationals or the national security of the United States' . . . . Whether this last criterion has been met presents a nonjusticiable political question . . . .").

The political question doctrine therefore divests this Court of jurisdiction to consider SFJ's claims. SFJ alleges and seeks a judicial directive that RSS qualifies as a foreign terrorist

organization under section 1189(a).  *See* Compl. at 17-22.  It also appears to allege that RSS qualifies as a specially designated global terrorist pursuant to Executive Order 13224.  *See id.* at 4.  But those determinations are the Secretary's alone to make, and the Court lacks authority to undertake the review necessary to declare that RSS is a foreign terrorist organization or specially designated global terrorist and to direct the Secretary to designate it as such.  In order to grant such relief, the Court would need to determine that RSS meets all three criteria in section 1189(a)—including that its activities threaten U.S. nationals or the national security of the United States.  *See* 8 U.S.C. § 1189(a).  Similarly, under section 1(b) of Executive Order 13224, the Court would need to find that RSS "ha[s] committed, or [ ] pose[s] a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States."  But this is precisely the type of finding that the D.C. Circuit has held is improper when a court reviews a foreign terrorist organization's challenge to its designation.  *See, e.g., People's Mojahedin Org. of Iran*, 182 F.3d at 23; *El-Shifa Pharm. Indus. Co.*, 607 F.3d at 843.  It is equally, if not more, improper here, where a third party seeks to compel the Secretary to take an action that self-evidently implicates the national security and foreign policy interests of the United States.  Accordingly, the Complaint should be dismissed for lack of subject-matter jurisdiction.

**B.       The Complaint Fails to State a Claim on Which Relief May Be Granted**

        **1.       Standard of Review for Motions to Dismiss Under Rule 12(b)(6)**

Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  In considering a Rule 12(b)(6) motion, a court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'"  *Selevan*, 584 F.3d at 88 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009)). Allegations that are "no more than conclusions[ ] are not entitled to the assumption of truth," and "'naked assertions' devoid of 'further factual enhancement" or "the-defendant-unlawfully-harmed-me accusation[s]" are not sufficient to show that a plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 678-79 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 557 (2007)). Nor must a court accept as true "legal conclusions" or "'a legal conclusion couched as a factual allegation.'" *Id.* Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

> 2. **Section 1189 and Executive Order 13224 Do Not Create Private Rights of Action for Third Parties**

In addition to being subject to dismissal on the jurisdictional grounds described above, the Complaint also fails to state a claim on which relief may be granted because section 1189—on which SFJ relies for its claims, *see* Compl. at 17-19—does not create a private right of action allowing third parties such as SFJ to compel the Secretary of State to act. Nor, for that matter, do Executive Order 13224 or the statutes pursuant to which it was issued—IEEPA and the UNPA—create private rights of action.

Section 1189 plainly does not create an express private right of action for third parties. As explained above, nothing in section 1189 provides that third parties such as SFJ may seek to compel the Secretary to designate an entity as a foreign terrorist organization. Indeed, the only judicial review that the statute contemplates is limited review in the D.C. Circuit of designations that the Secretary actually makes, pursuant to challenges brought by the designated organizations themselves. *See* 8 U.S.C. § 1189(c). And Executive Order 13224, for its part, does not contain any provisions that expressly provide for judicial review. The UNPA likewise does not provide

for judicial review, *see* 22 U.S.C. § 287(c), while IEEPA "does not confer or imply any right to judicial review," 50 U.S.C. § 1702(c).

Nor does either section 1189 or Executive Order 13224 create an implied private right of action for third parties. In *Cort v. Ash*, 422 U.S. 66 (1975), the Supreme Court set forth a four-factor test for determining whether such a right of action exists:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted,—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78. Among these, "[t]he dispositive question remains whether Congress intended to create any such remedy." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24 (1979); *accord Health Care Plan, Inc. v. Aetna Life Ins. Co.*, 966 F.2d 738, 740 (2d Cir. 1992) ("the Supreme Court has since refocused [the *Cort* factors] by emphasizing the centrality of the second factor—congressional intent").

All of these factors weigh against finding an implied private right of action here. There is no indication that section 1189 and Executive Order 13224 were intended to benefit third parties like SFJ. The statute authorizes only the Secretary to designate an entity as a foreign terrorist organization, *see* 8 U.S.C. § 1189(a), directs the Secretary to notify only Congress through a classified communication prior to such a designation, *see* 8 U.S.C. § 1189(a)(2)(A)(i), and contemplates limited judicial review of such designations initiated solely by the designated organizations themselves in the D.C. Circuit, *see* 8 U.S.C. § 1189(c). Put simply, the language of the statute recognizes no interest on behalf of third parties like SFJ, much less an enforceable one. Likewise, in language reminiscent of section 1189, Executive Order 13224 entrusts the

14

designation of specially designated global terrorists to the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General, and makes no provisions for enforceable rights by third parties. Similarly, both IEEPA and the UNPA grant extensive authority to the President in dealing with national emergencies and implementing U.N. Security Council resolutions. *See* 22 U.S.C. § 287c(a); 50 U.S.C. § 1702(a). Since section 1189 and Executive Order 13224 do not "benefit [the] particular class" to which SFJ belongs, *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 771 (1981), SFJ cannot satisfy the first *Cort* factor.

For much the same reasons, there is no indication that Congress intended section 1189 to create the remedy SFJ seeks. To the contrary, the statute suggests that Congress's intent was to deny such a remedy. The considerable discretion given to the Secretary in the procedures for designating foreign terrorist organizations, *see* 8 U.S.C. §§ 1189(a)(2)-(3), and the limited review of such designations contemplated by the statute, *see* 8 U.S.C. §§ 1189(a)(4)(B), (c), hardly suggest that Congress intended third parties to be able to compel the Secretary to act through judicial intervention. This is particularly true given that the designation of foreign terrorist organizations implicates foreign policy and national security considerations into which the judiciary is generally prohibited from intruding. *See, e.g., In re Austrian & German Holocaust Litig.*, 250 F.3d at 163–64; *Waterman*, 333 U.S. at 111.

Finally, a private right of action would be wholly inconsistent with the statutory scheme and underlying purpose of section 1189, which is to authorize the Secretary of State to designate foreign terrorist organizations after considering, among other things, the national security interests of the United States. *See* 8 U.S.C. § 1189(a); *see also* Exec. Order No. 13,224, § 1(b) (providing for designation based on "acts . . . that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States"). Allowing third parties such

as SFJ to compel action by the Secretary in the realm of foreign affairs merely by submitting a letter, and then seek a judicial remedy once that third party has decided that the Secretary has failed to adequately respond to that letter, would not "enhance" the process of designating foreign terrorist organizations in the interest of national security, but rather "would impede it." *Thye v. United States*, 109 F.3d 127, 129 (2d Cir. 1997).

### 3. SFJ Is Not Entitled to a Declaratory Judgment Under the APA

SFJ's claim that it is entitled to a declaratory judgment under the APA, *see* Compl. at 23-24, is misplaced for two reasons. First, APA review is not available to the extent that other "statutes preclude judicial review." 5 U.S.C. § 701(a)(1); *see also Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (APA "explicitly does not apply" in such circumstances). Here, section 1189(c) provides for judicial review, and, in doing so, makes no provision for the type of review that SFJ seeks, *i.e.*, review of the lack of a designation despite a third-party request for such a designation.

Second, a declaratory judgment pursuant to the APA is inappropriate because the Secretary's decision about whether to designate an entity as a foreign terrorist organization is discretionary. Agency action is not subject to judicial review under the APA "to the extent that" such "action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003). "This limitation on the APA's waiver of immunity means that there is no jurisdiction if the statute or regulation said to govern the challenged agency action 'is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion.'" *Lunney*, 319 F.3d at 558 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)) (emphasis in original). "Therefore § 701(a)(2) requires

careful examination of the statute on which the claim of agency illegality is based, and requires dismissal when there is no law to apply." *Id.* (citation and internal quotation marks omitted).

Section 1189 entrusts the designation of foreign terrorist organizations to the Secretary. While that statute "does not grant the Secretary unfettered discretion" insofar as it specifies certain findings upon which the Secretary's designation must be based, *see Humanitarian Law Project*, 205 F.3d at 1137, the latitude afforded the Secretary to decide whether to designate a group that he determines does meet the standard is plenary. Furthermore, the grounds on which such decisions may be reviewed—*i.e.*, to determine whether an entity that the Secretary has designated is a foreign organization engaged in terrorist activity, *see People's Mojahedin Org. of Iran*, 182 F.3d at 23—have no bearing here, where SFJ asks this Court to evaluate the lack of a designation. Designations under section 1189 and Executive Order 13224 both require findings that the actions of the designated entity threaten the national security of the United States—a question that is nonjusticiable. *See supra* at 12. In this respect, the statute and the Executive Order provide "no meaningful standard" against which the Secretary's exercise of discretion may be measured, *see Lunney*, 319 F.3d at 558, and a declaratory judgment is therefore unavailable.

### 4.     SFJ Is Not Entitled to a Writ of Mandamus

Finally, the Complaint fails to state a claim for mandamus relief. "[M]andamus is an extraordinary remedy, intended to aid only those parties to whom an official or agency owes a *clear nondiscretionary duty*." *Escaler v. U.S. Citizenship & Immigration Servs.*, 582 F.3d 288, 292 (2d Cir. 2009) (citation and internal quotation marks omitted; emphasis added). Accordingly, "[a] party who seeks a writ of mandamus must show a clear and indisputable right to its issuance." *Id.* (citation and internal quotation marks omitted). SFJ simply cannot meet this high threshold, because nothing in either section 1189 or Executive Order 13224 imposes on the

Secretary any duty, let alone a clear and non-discretionary duty, to designate an entity as a foreign terrorist organization or a specially designated global terrorist at the request of a third party. Nor does the statute or the Executive Order confer any entitlement upon any person or entity to have the Secretary make such a designation.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Date:   New York, New York
        April 14, 2015

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        *Attorney for Defendant*

                                    By: /s/ Christopher Connolly
                                        CHRISTOPHER CONNOLLY
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Tel.: (212) 637-2761
                                        Fax: (212) 637-2786
                                        christopher.connolly@usdoj.gov