**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Sikhs For Justice "SFJ", INC.,** | ) |
| **Asifbhai Vohra, individually,** | ) **Civ. No. 15 CIV 433 (LTS)** |
| **"JANE DOE", individually, a fictitious** | ) |
| **Name representing an individual harmed** | ) |
| **By the actions of the organization that is** | ) |
| **The basis of this complaint,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **JOHN KERRY,** | ) |
| **in his official capacity as** | ) |
| **U.S. SECRETARY OF STATE,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Babak Pourtavoosi, Esq
Pannun Law Firm
75-20 Astoria Boulevard, Suite 170
Jackson Heights, NY 11370
T: 718- 672-8000 F:718-672-4729
babakpacer@ gmail.com

JEFFREY J. ESTRELLA, ESQ.
ASSOCIATE ATTORNEY
ON THE BRIEF

## PRELIMINARY STATEMENT

Plaintiffs, by and through their attorney, hereby oppose the Motion to Dismiss the First Amended Complaint filed by Defendant on July 10, 2015. As argued herein, Defendant's Motion to Dismiss completely lacks merit and should be denied in its entirety.

## BACKGROUND INFORMATION PER FIRST AMENDED COMPLAINT

Defendant correctly addresses the Legal Framework for the Designation of FTOs under 8 U.S.C. §1189 AKA Immigration and National Act ("INA") §219 and Section 302 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") Pub. L. No. 104-132, 110 Stat. 1214 and the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §701 et seq., and section 5 of the United Nations Participation Act of 1945 ("UNPA"), 22 U.S.C. §287c, as well as President Bush's Executive Order 13224. Defendant; however, scarcely mentions the International Religious Freedom Act of 1998 (IRFA), 22 U.S.C. 6401 in its analytical description, which has key elements addressed in Plaintiffs' First Amended Complaint and is critical to understanding the seriousness of the actions of RSS and how Congress specifically authorizes such designation in light of blatant terrorist activity, including the targeting of religious minorities forcing conversions and committing acts of mass violence and destruction against those who fail to convert accordingly.

## ARGUMENT

### THE MOTION TO DISMISS THE FIRST AMENDED COMPLAINT SHOULD BE DENIED

The motion to dismiss the first amended complaint should be denied for lack of merit. The arguments made therein are lacking in correct legal analysis and completely baseless in fact. This honorable Court has subject matter jurisdiction over this action. Plaintiffs have standing to request that Defendant, the United States Secretary of State exercise his discretion in designating Rashtriya Swayamsevak Sangh ("RSS") as a Foreign Terrorist Organization ("FTO") under U.S. law. Failure of Defendant to so designate RSS as an FTO after being presented with a detailed synopsis of the law and facts pertaining to the activities of RSS and how the law compels an exercise of discretion to designate accordingly results in Plaintiffs pursuing a claim for a Writ of Mandamus under federal law to instruct Defendant to exercise such discretion accordingly.

### DEFENDANT HAS FAILED TO MEET THE STANDARD FOR DISMISSAL UNDER THE LAW

Defendant's standard for dismissal under Rule 12(b)(1) is lack of subject matter jurisdiction and under Rule 12(b)(6) is failure to state a claim where relief can be granted.

Both these arguments fail in this case because as argued above Plaintiffs have subject matter jurisdiction and have shown same to this honorable Court.

Plaintiffs therefore have a valid claim where relief for mandamus and declaratory judgment are proper and should be adjudicated in Plaintiffs' favor.

**A. THERE IS SUBJECT MATTER JURISDICTION**

There is subject matter jurisdiction in this case because:

1. Plaintiff Sikhs for Justice (SFJ) has standing to act on behalf of its members.

2. Plaintiffs Michael Masih, Hasim Ali, and Kulwinder Singh have absolute standing to bring the claim on their own behalf as victims or relatives of victims of the atrocities committed by the terroristic actions of RSS.

3. The Political Question doctrine does not apply in this case because it is a claim for mandamus and is a legitimate claim accordingly that can be pursued against a government official. 8 U.S.C. §1189 and Executive Order 13224 provide the legal framework for which that action is based. The Political Question doctrine was discussed in the matter of *Baker v. Carr*, 369 U.S. 186, 217 (1962) and is used to preclude judicial review of certain matters such as a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of

government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question. None of these apply here. Congress explicitly gave the court permission to adjudicate this type of claim involving mandamus and declaratory judgment in 28 U.S.C. §1361, the federal question statute, 28 U.S.C. §1331 and for Declaratory Judgment under the Administrative Procedures Act ("APA"), 5 U.S.C. §§555(b) and 706(1) and Declaratory Judgment Act, 28 U.S.C. § 2201.

4. Plaintiffs have a private right of action accordingly to sue a government official for mandamus relief and a declaratory judgment when the government official failed to act. Secretary of State John Kerry was bound to exercise his discretion when the law and the facts surrounding the designation of RSS as an FTO were detailed with precision and such failure was tantamount to a blatant abuse of discretion. Plaintiffs provided Defendant with the opportunity to exercise its discretion by following the law of designating RSS as an FTO but Defendant failed to do so and to this date, Plaintiff has yet to receive any notification from Defendant and it is clear that Defendant has failed to act in conformity with its obligations. Plaintiffs therefore brought this action for Mandamus and Declaratory Judgment.

Plaintiffs are therefore entitled to a writ of mandamus and declaratory judgment against Defendant John Kerry as U.S. Secretary of State. Further, SFJ is entitled to a declaratory judgment under the Administrative Procedures Act (APA) because the APA, 5 U.S.C. § 701, et seq. Pub. L. No. 94-574, Act of October 21, 1976, 90 Stat. 2721, 5 U.S.C. § 702 was amended to provide that an "action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party." Furthermore, APA 5 U.S.C. § 703 has been amended to allow suit to be brought against the United States or any of its agencies or officers. Consequently, Plaintiffs have a right to pursue the claims made in the First Amended Complaint filed on June 16, 2015 and have a right and entitlement to both forms of relief.

As a result of the aforementioned, this honorable Court has subject matter jurisdiction over Plaintiffs' claims. Dismissal of this complaint is inappropriate for failure to state a claim because Plaintiffs have stated viable claims accordingly.

The horrific nature of the actions committed by RSS against the individual Plaintiffs, their family members, and the individual members of SFJ, should compel this honorable Court to deny the Defendant's motion so that this matter can

be presented on the merits before a proper trial and the arguments addressed therein.

Plaintiffs have grave concerns that RSS tactics including excessive targeting of forced religious conversions and slayings as well as fundraising operations that are increasingly international in scope, including within the United States.

Plaintiffs have included a plethora of details involving a non-exhaustive list of violent attacks committed by RSS in India going back over thirty years.

Defendant clearly overlooks the importance of Executive Order 13224 that was designed specifically for this type of case to disrupt or block the assets in the "financial support network for terrorists" and "terrorist organizations" by allowing the U.S. government to designate certain entities as FTOs. RSS is such an FTO in that it poses a significant risk of terrorism to the U.S. and the world.

As argued to Defendant before and described in the First Amended Complaint, Section 219 of the INA, 8 U.S.C. §1189 compels the exercise of the Secretary of State's discretion to designate RSS as an FTO because:

1. RSS is *engaged in terrorist activity*[1], as defined in section

---

[1] Terrorist Activity is defined under INA Section 212(a)(3)(B)(iii) as "any activity which is unlawful under the laws of the place where it is committed" including " high-jacking or sabotage of any conveyance"; "seizing or detaining, and threatening to kill, injure, or continue to detain, another

individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained"; "[a] violent attack upon an internationally protected person (as defined in section 1116(b)(4) of title 18, United States Code) or upon the liberty of such a person"; "assassination"; "use of any- (aa) biological agent, chemical agent, or nuclear weapon or device, or (bb) explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property"; or "threat, attempt, or conspiracy to do any of the foregoing."

Being engaged in terrorist activity is defined under INA Section 212 (a)(3)(B)(iv) as "in an individual capacity or as a member of an organization- (I) to commit or to incite to commit, under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity; (II) to prepare or plan a terrorist activity; (III) to gather information on potential targets for terrorist activity; (IV) to solicit funds or other things of value for-- (aa) a terrorist activity; (bb) a terrorist organization described in clause (vi)(I) or (vi)(II); or (cc) a terrorist organization described in clause (vi)(III), unless the solicitor can demonstrate by clear and convincing

evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization; (V) to solicit any individual-- (aa) to engage in conduct otherwise described in this subsection; (bb) for membership in a terrorist organization described in clause (vi)(I) or (vi)(II); or (cc) for membership in a terrorist organization described in clause (vi)(III) unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization; or (VI) to commit an act that the actor knows, or reasonably should know, affords material support, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training-- (aa) for the commission of a terrorist activity; (bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity; (cc) to a terrorist organization described in subclause (I) or (II) of clause (vi) or to any member of such an organization; or (dd) to a terrorist organization described in clause (vi)(III), or to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was a terrorist organization."

212(3)(B)(iii) and (iv) of the INA (8 U.S.C. §1182(a)(3)(B)), or *terrorism*, as defined in section 140(d)(2) of the Foreign Relations Authorization Act, 22 U.S.C. § 2656f(d)(2), *or retain the capability and intent to engage in terrorist activity or terrorism.* The evidence exists in the scores of articles and news reports available on the public record regarding the atrocities and terroristic crimes committed against religious minorities by RSS.

RSS's terrorist activity or terrorism threatens the security of U.S. nationals or the national security (national defense, foreign relations, or the economic interests) of the United States. It is abundantly clear that mass targeting of religious minorities in India and elsewhere for forced conversion in a "convert or die" situation coupled with fundraising efforts of an increasingly international scope threaten the fundamental security interests of United States citizens, nationals, and entities both domestically situated and abroad.

---

Terrorism as defined under section 140(d)(2) of the Foreign Relations Authorization Act, 22 U.S.C. § 2656f(d)(2) is defined as "premeditated, politically motivated violence perpetrated against noncombatant targets by sub-national groups or clandestine agents."

The growth of RSS as a terrorist network cannot be condoned or tolerated as violating of the law of nations and the laws of the United States of America.

Article III standing has been shown to exist in that there is a sufficient case and controversy to this action in the standing of Plaintiffs. Plaintiffs have suffered an injury in fact in the deaths of thousands of individuals who are of Sikh origin due to the massacres brought on by several groups in India, most notably RSS. The failure of Defendant to properly exercise his discretion to designate RSS as an FTO as mandated by law is another stinging massacre against Plaintiffs and their deceased and living family members who have suffered at the hands of RSS. The injury is legally cognizable as actual claims that could be brought against the perpetrators directly. They are claims for battery, wrongful death, negligent and intentional infliction of emotional distress, war crimes, crimes against humanity, and many more that are real claims. The injury is in fact concrete and particularized as evidenced by the numerous references in the First Amended Complaint to the horrible atrocities committed by RSS against the Sikh minority and the Individual Plaintiffs and their family members as well as the members of SFJ. There is nothing conjectural or hypothetical about the threat RSS poses to the world but there is an imminent and actual spread of violence, hatred, forced conversions, and unlawful conduct against the religious minorities if India and the world. Anyone who opposes the Hindu Nationalist threat faces the wrath of mass

violence and destruction of RSS. "Convert or get ready to die" is the tagline emphasized by the RSS against those who will not become Hindu.[2] There can be no greater threat of imminent harm to the world than by a rapidly-growing religious and violently-embodied oligarchy. There is a significant link or causal connection between the injury the Plaintiffs and the world faces from RSS and the conduct of RSS as the Plaintiffs have been injured by the direct conduct of RSS as alleged in detail in the First Amended Complaint and further there is a direct correlation from this evil belligerent conduct to the harms that will come and have come if the organization's efforts are not stopped by the United States Secretary of State exercising its authority to designate them as an FTO. Finally, this honorable Court has the authority to act and grant relief to redress with a favorable decision in favor of Plaintiffs, after a full hearing and trial on the merits, that Plaintiffs' claim for mandamus and declaratory judgment should issue and designation of RSS as an FTO must be compelled accordingly.

The injuries suffered by Plaintiffs are real. Contrary to Defendant's assertions that "Plaintiffs Masih, Ali, and Singh also cannot establish a causal connection for the additional reason that 'the conduct complaint of' has nothing to do with them---nowhere does the First Amended Complaint even allege that these plaintiffs have any relationship with SFJ or played any role in sending the

[2] http://www.cnsnews.com/news/article/patrick-goodenough/radical-hindus-indias-christians-convert-or-get-ready-die

December 2014 letter to the Secretary." Def. Br. Pg. 9. On the contrary, these Plaintiffs have a direct causal connection and the conduct complained of by RSS has directly impacted their personal lives. They have detailed their personal stories in the First Amended Complaint in sufficient detail to warrant a reasonable factfinder to determine that there is sufficient injury in fact and it is indeed fairly traceable to the conduct of RSS complained of and now the conduct or failure and omission of Defendant to designate RSS as an FTO further contributing to the trauma, both mental and emotional, that the individual Plaintiffs have suffered. Plaintiffs Masih, Ali, and Singh need not be involved in sending the letter to Defendant in December 2014. SFJ acted as the intermediary to send the letter. Plaintiffs in the aggregate have strong injuries and a right to the relief requested.

Also, contrary to the Defendant's contentions, SFJ has absolute standing to bring suit on behalf of its associational members because they do in fact have injuries suffered similar to the named Plaintiffs in that they themselves or deceased or living family members have been the victims of the atrocities committed by RSS. Defendant would be free to inquire during the discovery process. But nevertheless dismissal is inappropriate for the reason that injuries do exist and standing exists, therefore subject matter jurisdiction absolutely exists herein. The challenged injuries are related to the conduct or omission of Defendant in failing to designate RSS as an FTO and failing to provide justice to the victims of these

horrible and senseless actions of terrorism that have plagued a generation of Sikhs and other religious minorities for over thirty years and continue to do so to this day. To indicate that the horrible actions that led to such suffering are "merely speculative" is insulting to the thousands of victims who lost their lives in the massacres by RSS and certainly this honorable Court should recognize as fact.

This completes the analysis for standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Regarding the issue of whether or not the Political Question doctrine applies, Defendant's reasoning is incorrect. Defendant incorrectly relies on *El –Shifa Pharm. Indus. Co. v. U.S.*, 607 F.3d 806, 843 (D.C. Cir. 2010) for the proposition that the political question doctrine bars judicial consideration of the designation analysis of an FTO specifically the issue whether "the terrorist activity of the organization threatens the security of United Stated nationals or the national security of the United States." Not only is this case not binding on this court, it is incorrectly applied as that case dealt with issues significantly different from the instant case. That case makes it clear that the court must conduct "'a discriminating analysis of the particular question posed' in the 'specific case' before the court to determine whether the political question doctrine prevents a claim from going forward." *Id.* at 841. In this case the discriminating analysis will lead this court to the conclusion that there is no political question here or bar to challenge simply

because national security concerns are implicated. In the matter of *Wilson v. Libby*, 535 F.3d 697,703-04 (D.C. Cir. 2008), the court held that the political question doctrine did not bar a challenge based on implication of national security because Plaintiffs did not challenge foreign policy or national security decisions. Here, Plaintiffs challenge the failure of Defendant to act or even consider the designation of RSS as an FTO. This would prevent RSS from seeking funds or being supported or involved with any American organization. It would affect domestic, not foreign policy. Further, Plaintiffs' claims challenging the failure of the Defendant to designate would simply implicate national security not be a direct challenge to such decisions and therefore are outside the scope of the Political Question doctrine. There is no bar here and the claim is absolutely justiciable to determine that Plaintiffs are rightfully entitled to a writ of mandamus and declaratory judgment. Defendant abused his discretion in failing to determine and designate that RSS is an FTO.

Therefore, Plaintiffs have sustained their burden of establishing that there is standing, the political question doctrine does not apply, and a private right of action does exist making subject matter jurisdiction to exist under the law and this matter was properly brought before this honorable court. Therein, Plaintiffs respectfully request that this honorable Court should deny Defendant's motion and

allow this litigation to proceed to the merits as there is clear subject matter jurisdiction.

## B. THERE IS A PROPER CLAIM FOR RELIEF TO BE GRANTED

Plaintiffs have stated a proper claim for relief under the APA and all relevant law.

Plaintiffs First Amended Complaint reads most importantly that "[o]ver the previous years as noted herein, RSS, a foreign organization originating in India and being one of the dominant parties in India, has intensified its campaign of terrorism, including acts of random and targeted violence and threats against members of minority religions and sympathizers who act against the spread of Hindu nationalism throughout the subcontinent of India. RSS has "[in the aftermath of the Gujarat earthquake in 2001] … distributed relief selectively to upper-caste victims, neglecting Dalits and Muslims. The RSS also organized [sic] shakhas [local chapters] in relief camps. At Adhoi village, Vishwa Hindu Parishad (VHP) preachers gave lectures every night on the need to be vigilant against Christians and Muslims. RSS volunteers allegedly threatened other relief workers with harm unless they left Kutch" (Bunsha 2004). The U.S. counterparts of the militant Rashtriya Swayamsevak Sangh (RSS) and the Vishwa Hindu Parishad (VHP) — the Hindu Swayamsevak Sangh (HSS, identification number 52-1647017) and the VHP of America (VHPA, identification number 51- 0156325),

respectively—both operate youth camps and education programs to promote 'Hindu culture' and to encourage young Hindus to 'develop pride in their Hindu identity'[3]."

This directly causes a blatant disregard for the rights of minority religions is a grave threat to the United States of America and the security of such persons residing within the United States. Designation of RSS as an FTO is the only logical and appropriate remedy and Defendant's failure to do so upon request when presented with clear legal reasoned analysis and factual indicators of terrorist activity by RSS is a violation of law in and of itself and a breach of discretion, abuse of discretion, and conduct unbecoming an appointed official for which writ of mandamus and declaratory judgment relief is emphatically proper.

Plaintiffs have pleaded factually and well-pled the issues and they are not bold or naked legal conclusions but specific factual issues involving the atrocities committed by RSS and how the failure of the Defendant to designate the RSS as an FTO has increased the injury to Plaintiffs. Defendant consistently reiterates that the alleged laws do not create a private right of action; however, the above-arguments indicate that Plaintiffs have every right to pursue a cause of action for mandamus and declaratory judgment when you have a government official who blatantly

[3] http://www.frontline.in/static/html/fl2108/stories/20040423003504300.htm

abuses his discretion and fails to act in light of reasoned law and factual assertions concerning a grave threat to the security and interests of the United States.

Even assuming *arguendo* Defendant is correct about no express cause of action existing, Plaintiffs maintain there is a right of action implicitly and that Defendant's analysis under *Cort v. Ash*, 422 U.S. 66 (1975) is incorrect. Legislative intent clearly favors Plaintiff given the language of the APA that creates this right of action expressly so there is no need to look for an implied right of action against the federal government. The APA also waives the federal government's sovereign immunity over suits "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702.

Further, Plaintiffs have shown they are part of the class meant to be protected by the laws requiring designation of RSS as an FTO based on the many claims of reference in the First Amended Complaint and the arguments above. There is therefore an implied remedy to Plaintiffs to pursue this claim for mandamus and claim for declaratory judgment on the grounds that they had suffered injury and these claims are not for money damages and against "an agency or an officer" who "failed to act in an official capacity," namely the Defendant. *Id.*

This is not the type of action traditionally relegated to state law as the *Cort v. Ash, supra,* decision indicates but is one that not inappropriate to infer a cause of action based on federal law before a federal tribunal. The language of 8 U.S.C. §1189 and 5 U.S.C. § 702 when read together do in fact imply a cause of action for Plaintiffs to bring a claim against Defendant for failing to designate RSS as an FTO. This joining of statutes provides the congressional intent needed under the *Cort v. Ash, supra,* decision.

Defendant incorrectly attempts to make law in the regarding by stating "[a]llowing third parties to compel action by the Secretary in the realm of foreign affairs merely by submitting a letter, and then seek a judicial remedy once those third parties have decided that the Secretary has failed to adequately respond to that letter, would not 'enhance' the process of designating foreign terrorist organizations in the interest of national security, but rather "would impede it." *Thye v. United States*, 109 F.3d 127, 129 (2d Cir. 1997)." This is untrue as a statement and contrary to the analysis correctly argued above that Congress intended parties to have the right to pursue claims against government officials for failures in that "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702. This includes violation of Defendant's obligations under 8 U.S.C. §1189. The only thing that

would "impede" the interests of justice and protection of national security would be the policy of not allowing parties claiming such failure by a government agency or officer to be judicially enforced and adjudicated.

Further, Plaintiff's reliance on the International Religious Freedom Act shows the need for justiciability of this crucial issue as to whether RSS deserves to be designated an FTO and whether Defendant overstepped his discretionary bounds in failing to act to designate them accordingly.

## PLAINTIFFS ARE ENTITLED TO A WRIT OF MANDAMUS AND DECLARATORY JUDGMENT AGAINST DEFENDANT IN THIS CASE

Defendant's arguments that Plaintiff's claims are not justiciable under the APA and the lack of specific language in 1189(c) are defeated for the arguments presented above. The fact that the Defendant has discretion over whether to designate does not make him free to abuse that discretion in failing to act over a lawful request for designation especially in the face of overwhelming evidence in support of that designation as indicated in the First Amended Complaint and attached exhibit. Dismissal is inappropriate in face of law and fact that justify trial of this action to determine whether such abuse of discretion was proper. Plaintiffs have shown a clear and nondiscretionary duty to them by Defendant in the language of 8 U.S.C. §1189 and 5 U.S.C. § 702. Defendant had a duty to designate or to state why they would fail to do so and simply choose to ignore Plaintiffs'

request leaving them no option but to bring this action. In this instance, mandamus is appropriate and declaratory judgment is appropriate because Defendant's failure to act in response to Plaintiffs' request within a reasonable period of time constituted assumption of a duty, assuming there was none to begin with and there clearly was.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss of Defendant must be denied in its entirety and Defendant compelled to produce an Answer to the First Amended Complaint or be held in Default.

Dated: Jackson Heights, New York
July 20, 2015

Respectfully submitted,

PANNUN LAW FIRM, PC
*Attorneys for Plaintiffs*

By: /s/Babak Pourtavoosi, Esq
Babak Pourtavoosi, Esq.
Of Counsel

By: /s/ Jeffrey J. Estrella, Esq.
Jeffrey J. Estrella, Esq. on the Brief
Associate Attorney
75-20 Astoria Boulevard, Suite 170
Jackson Heights, NY 11370
Tel. 718- 672-8000
Fax.718-672-4729
babakpacer@ gmail.com
Estrella.jeffrey@gmail.com